UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,
ex rel. RUQIAYAH MADANY and
JOHN B. COLLINS,

        Plaintiffs/Relators,

v.

PAUL M. PETRE, M.D., et al.,

        Defendants.
_____/

Case No. 2:09-cv-13693

HONORABLE STEPHEN J. MURPHY, III

## **OMNIBUS OPINION AND ORDER**

Plaintiff brought the present complaint and alleged that Defendants violated the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, were unjustly enriched, and received payments by mistake. ECF 186, PgID 1458–67. The Court has dismissed some Defendants and Clerk of the Court has entered default judgment against others. Now only three Defendants remain: Victor Savinov, Nabila Mahbub, and Chiradeep Gupta. After extensive pretrial litigation, the Government and Defendant Savinov cross-moved for summary judgment. ECF 324, 327. The Court reviewed the briefing and finds that a hearing is unnecessary. *See* E.D. Mich. L.R. 7.1(f). For the following reasons, the Court will grant in part and deny in part the motions.

### **BACKGROUND**

The Relators initially filed a qui tam complaint and alleged that Defendants violated the FCA when they participated in a massive scheme to defraud Medicare.

The Government intervened in the lawsuit, ECF 44, and later filed an amended complaint that detailed the conspiracy, ECF 186.

Muhammad Shahab was at the heart of the conspiracy. Shabab owned two home healthcare agencies and provided funds for other individuals to purchase several healthcare agencies. ECF 324-10, PgID 2401. Shabab employed "[m]arketers" who paid individuals to enroll as patients in the home healthcare agencies. *Id.* at 2402. He also paid kickbacks to several physicians to secure home healthcare referrals. *Id.* at 2403–07.

The Relators quickly uncovered the scheme and filed the present case. ECF 1. The Government then intervened, ECF 44, and either dismissed, entered consent judgments, or received default judgments against all but five Defendants. ECF 68, 262–83, 285, 320, 370–92. The Government moved for summary judgment against Defendants Mahbub, Gupta, Petre, Savinov, and the estate of Pramod Raval. ECF 324. Savinov also moved to dismiss the complaint or in the alternative for summary judgment. ECF 327. The parties stipulated to dismiss the claims against Petre and Raval. ECF 402, 404. Thus, Mahbub, Gupta, and Savinov are the only remaining Defendants.

**LEGAL STANDARD**

A court analyzes a Rule 12(c) motion for judgment on the pleadings using the same standard it would employ for a 12(b)(6) motion to dismiss. *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (citations omitted). The Court accepts as true all well-pleaded material allegations of the pleadings and draws reasonable factual inferences in favor of the non-moving party, but "need not accept

2

as true legal conclusions or unwarranted factual inferences." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581–82 (6th Cir. 2007) (quotation omitted). The complaint must "raise a right to relief above the speculative level, and [] state a claim to relief that is plausible on its face." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It is not enough to offer mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

Summary judgment is proper if the movant shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material for purposes of summary judgment if its resolution would establish or refute an "essential element[] of a cause of action or defense asserted by the parties[.]" *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quotation omitted).

The Court must view the facts and draw all inferences in the light most favorable to the non-moving party. *Stiles ex rel. D.S. v. Grainger Cnty.*, 819 F.3d 834, 848 (6th Cir. 2016) (citation omitted). The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). And although the Court may not make credibility judgments or weigh the evidence, *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015), a mere "scintilla" of evidence is insufficient to survive

3

summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff," *Anderson*, 477 U.S. at 252.

## DISCUSSION

The Court will first address the Government's claims against Mahbub and Gupta. It will then address the competing motions involving Savinov.

I.   Defendants Mahbub and Gupta

The Government argued that it is entitled to summary judgment against both Mahbub and Gupta because they were found guilty of offenses stemming from the conspiracy and are "estopped 'from denying the essential elements of the offense' in this action because it involves 'the same transaction as in the criminal proceeding . . . .'" ECF 324, PgID 2262 (quoting 31 U.S.C. § 3731(e)). For the FCA's estoppel provision to apply, Defendants' conviction must stem from "fraud or false statements." § 3731(e).

A jury convicted Gupta of health care fraud conspiracy and money laundering. ECF 324-32, PgID 3174–75 (verdict); ECF 324-16 (judgment). And a jury convicted Mahbub of health care fraud conspiracy. ECF 324-33, PgID 3176 (verdict); ECF 324-15 (judgment). Both convictions stem from Defendants' involvement in the conspiracy at the heart of the present case. *Compare* ECF 324-6 (criminal indictment against Gupta and Mahbub) *with* ECF 186 (amended complaint); *see also United States v. Szilvagyi*, 398 F. Supp. 2d 842, 847 (E.D. Mich. 2005) (applying collateral estoppel to a civil charge under the FCA after a defendant was convicted of conspiracy to commit health care fraud). Because Gupta and Mahbub were convicted of a fraud offense stemming from the same actions in the present case, they are estopped from denying

4

any of the essential elements of the present claim.[1] As a result, the Government is entitled to summary judgment against Gupta and Mahbub.

The Court must now calculate the damages the Government is entitled to from the two Defendants. The FCA provides that the Government is entitled to "a civil penalty of not less than $5,000 and not more than $10,000 . . . plus 3 times the amount of damages which the Government sustains because of the act of that person." 31 U.S.C. § 3729(a)(1)(G). Courts generally base the amount of damages the Government sustains on the restitution ordered during Defendants' criminal trial. *See Szilvagyi*, 398 F. Supp. 2d at 849–50. But the Court must reduce the amount by any restitution Defendants previously paid. *United States v. Rogan*, 517 F.3d 449, 453 (7th Cir. 2008) (Easterbrook, J.) (noting that the Court must reduce the amount of damages by the amount of restitution paid). The Government did not ask for any penalty between $5,000 and $10,000 but did ask for damages equal to three times the amount the Government incurred because of Defendants' actions. But the parties have not stated

---

[1] After Mahbub was sentenced, she appealed her conviction and the Sixth Circuit remanded the case to the trial court for a decision on whether the Government discriminated during jury selection. *United States v. Mahbub*, 818 F.3d 213, 233 (6th Cir. 2016). The trial judge has yet to rule on the discrimination issue. Thus, Mahbub argues that the Court cannot consider her convicted for purposes of the Government's summary judgment motion. ECF 417, PgID 6349. Perhaps so. But Mahbub has neither sought a writ of mandamus to compel a decision by the trial judge or, to the Court's knowledge, done anything else to move that matter along. The Court has been advised for three years, since May 2018, that a ruling on the discrimination issue was forthcoming. ECF 395. And waiting longer is not warranted. Further delay beyond three full years clearly contravenes Federal Rule of Civil Procedure 1's requirement of a speedy resolution of every action. If the trial judge overturns Mahbub's conviction, she can simply move for further relief here under Rule 60. *Szilvagyi*, 398 F. Supp. 2d at 847 (noting that a defendant can move for relief from collateral estoppel under Rule 60 if the criminal judgment is later vacated).

5

how much restitution that Defendants have paid. The parties must therefore submit a joint status report within fourteen days of this order and state how much restitution Gupta and Mahbub have paid. The Court will then issue a supplemental order that calculates the outstanding damages.

II. <u>Defendant Victor Savinov</u>

Savinov and the Government both argue that they are entitled to a judgment in their favor. ECF 324, 327. The Government argues that it is entitled to summary judgment because the evidence shows that Shahab paid for Savinov's office space and administrative assistant for a few months. ECF 324, PgID 2271. But Savinov, argues that he is entitled to judgment on the pleadings because the claims against him were not pleaded with specificity. ECF 327, PgID 4827–28. He alternatively argues that he is entitled to summary judgment because the evidence establishes that he never received any illegal kickbacks. *Id.*

*A. Judgment on the Pleadings*

Savinov argued that the Government failed to plead its fraud claim with particularity. Under Federal Rule of Civil Procedure 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." "Complaints alleging FCA violations must comply with Rule 9(b)'s requirements that fraud be plead with particularity because 'defendants accused of defrauding the federal government have the same protections as defendants sued for fraud in other contexts.'" *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466 (6th Cir. 2011) (quoting *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003)). "Thus, where a relator pleads a complex and far-

6

reaching fraudulent scheme, he must also provide examples of specific false claims submitted to the government in order to proceed." *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 914 (6th Cir. 2017) (cleaned up).

Here, the Government adequately pleaded the claims. The complaint alleged that "[i]n return for unlawful financial inducements, Savinov, a Wayne County resident, caused the submission of at least 1,073 false claims for 865 Medicare beneficiaries for services ostensibly rendered . . . between October 3, 2008 and September 22, 2010, costing the Medicare program $4,063.393.21." ECF 186, PgID 1384. The complaint also alleged that Savinov and Shahab had a quid pro quo arrangement by which Shahab supplied Savinov with an office and assistant, and paid Savinov's American Express bill in exchange for certifying individuals as needing home healthcare services. *Id.* at 1455–56. The allegations alone established the "time, place, and context of the alleged misrepresentations," "the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 506 (6th Cir. 2007) (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys.*, 342 F.3d 634, 637–40 (6th Cir. 2003)). The Government therefore adequately pleaded the fraud scheme at the heart of the complaint and Savinov is not entitled to judgment under Rule 12.

### B. *Summary Judgment*

The Court will now address the Government and Savinov's competing motions for summary judgment. ECF 324, 327. In Savinov's motion, he noted that the

7

Government asserted only that he, and all the remaining Defendants, violated the federal Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a–7b(b)(1)(A), and therefore automatically violated the FCA. ECF 327, PgID 4849–51. But Savinov also argued that an AKS violation is not a per se FCA violation. *Id.* Finally both sides argued that they are entitled to summary judgment on the FCA claim. *Id.* at 4847–49; ECF 324, PgID 2267–74. The Court will first address the relationship between the AKS and the FCA and then address the remaining arguments.

1. *Relationship Between FCA and AKS*

Savinov argued that 42 U.S.C. § 1320a–7b(g)—which provides that an AKS violation constitutes a per se FCA violation—was not enacted until 2010, *after* the alleged kickbacks in this case occurred. ECF 327, PgID 4850. The Government admitted that § 1320(a)–7b(g) was enacted in 2010 but argued that before 2010, courts permitted AKS violations to proceed under the FCA. ECF 322, PgID 5203. And that position is well supported by case law. *See McNutt ex rel. United States v. Haleyville Med. Supplies, Inc.*, 423 F.3d 1256, 1259–60 (11th Cir. 2005) (Pryor, J.) (finding that an AKS violation can sustain a FCA claim before 2010.); *U.S. ex rel. Kosenske v. Carlisle HMA, Inc.*, 554 F.3d 88, 94 (3d Cir. 2009) (same). Thus, based on caselaw, the Court finds that an AKS violation constituted an FCA violation before 2010, though not a per se violation as it would be under the post-2010 statutory scheme.

8

### 2. *Remaining Summary Judgment Arguments*

Finally, the Court will address the competing summary judgment arguments. The Government reasoned that it is entitled to summary judgment because the evidence is clear that Savinov took kickbacks. To support the claim, the Government attached Shahab's deposition transcript of when he testified that Savinov was able to "bill services performed on [Medicare] beneficiaries produced by [Shabab's] recruiters directly to Medicare." ECF 324-10, PgID 2406. Shabab also testified that he paid Savinov's administrative assistant's salary "for a few months" and loaned three or four months of office rent to Savinov as Savinov started up his practice. *Id.* The Government also noted that Savinov invoked the Fifth Amendment when he was asked about kickbacks or how he got involved in the alleged conspiracy. The Government maintains that it is entitled to an adverse inference on those issues. ECF 324, PgID 2272. And finally, in its response to Savinov's summary judgment motion, the Government attached an agreement signed by Savinov and Shahab's wife, ECF 332-5, that stated Savinov would receive $80 per visit for each new patient, $60 for a follow up/revisit, and that he would not have to pay for office rent. a medical assistant, among other things. *Id*. And, when asked under oath about the agreement, Savinov asserted his Fifth Amendment right. ECF 327-2, PgID 4880–82. Based on all the evidence, the Government contends it is entitled to summary judgment.

Savinov, however, argued that he—not the Government—is entitled to summary judgment. He maintained that he never asked for, or received, a kickback for referring any patient to Shahab's home healthcare facilities. ECF 327, PgID 4847;

9

ECF 327-2, PgID 4922 (Savinov testimony that he never "received any remuneration from Muhammad Shahab"). Shahab's testimony also supports Savinov's position, in part. Shahab testified that he "did not give [Savinov] any kickback[s]." ECF 327-3, PgID 4975. Shahab also testified that he paid only one doctor, Dr. Raval, "to certify patients for home healthcare for [his] agencies." *Id.* at 4952, 4956.

The Government's and Savinov's motions show the inconsistency in Shahab's testimony. Shahab, for example, said that he did and did not pay kickbacks to Savinov. *See, e.g.*, ECF 327-3. Thus, there is a clear and genuine dispute of material fact about whether Savinov received a kickback. The Court will therefore deny both summary judgment motions as they relate to the FCA claims because there of the genuine dispute over whether Savinov accepted kickbacks and violated the FCA.

Finally, Savinov broadly argues that he is entitled to summary judgment on the unjust enrichment/constructive trust and payment by mistake claims because he "did not participate in the submission of any false claim in any manner." ECF 327, PgID 4845. But because there is a genuine dispute of material fact the Court cannot determine whether Savinov violated the AKS, and thus violated the FCA (and submitted false claims). As a result, the Court cannot grant summary judgment on the unjust enrichment/constructive trust and payment by mistake claims.

## CONCLUSION AND CASE MANAGEMENT

For the reasons stated above, the Court will grant in part and deny in part the Government's summary judgment motion and deny Savinov's summary judgment motion.

10

Last, because the case has been pending since 2009, and due to the ongoing delay in all in-person jury trials in the Eastern District of Michigan because of COVID-19, *see* 20-AO-038, 21-AO-006, the Court will refer the case to mediation with Mr. Patrick Seyferth. The mediation must occur no later than May 23, 2021.

## ORDER

**WHEREFORE** it is hereby **ORDERED** that the Government's motion for summary judgment [324] is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that summary judgment is **GRANTED** in the Government's favor against Defendants Gupta and Mahbub.

**IT IS FURTHER ORDERED** that the parties must **SUBMIT** a joint status report within fourteen days of this order and **STATE** how much restitution Defendants Gupta and Mahbub have paid.

**IT IS FURTHER ORDERED** the Government's motion for summary judgment [324] is **DENIED** as it relates to Defendant Victor Savinov.

**IT IS FURTHER ORDERED** that Defendant Victor Savinov's motion to dismiss and for summary judgment [327] is **DENIED**.

**IT IS FURTHER ORDERED** that the Court **REFERS** the case to Mr. Patrick Seyferth[2] for mediation and settlement discussions and **ORDERS** the parties to proceed in compliance with Local Rule 16.4. The mediation and settlement discussions shall occur no later than **May 23, 2021**. The parties shall contact Mr.

---

[2] Patrick Seyferth is a private attorney and founding member of the firm Bush Seyferth, PLLC. He can be reached at (248) 822-7802 and at Seyferth@bsplaw.com.

11

Seyferth and provide him with a copy of this order as soon as practicable and shall **NOTIFY** the Court of the date of the mediation session once it is scheduled.

**IT IS FURTHER ORDERED** that Mr. Seyferth shall **NOTIFY** the Court within seven days of completion of the mediation, stating only the "date of completion, who participated, whether settlement was reached, and whether further [alternative dispute resolution] proceedings are contemplated." E.D. Mich. L.R. 16.4(e)(6). If a settlement is reached, the parties shall **NOTIFY** the Court immediately upon completion of the mediation and shall **SUBMIT** a proposed order of dismissal within 21 days. *Id.* at 16.4(e)(7). If a settlement is not reached, the parties shall **NOTIFY** the Court within seven days of the completion of the mediation.

**IT IS FURTHER ORDERED** that if the parties are unable to resolve the case with Mr. Seyferth's assistance, they must **SUBMIT** a joint status report, no later than seven days after the mediation, informing the Court if they will consent to a bench trial.

**SO ORDERED**.

                                                s/ Stephen J. Murphy, III
                                                STEPHEN J. MURPHY, III
                                                United States District Judge

Dated: April 23, 2021

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 23, 2021, by electronic and/or ordinary mail.

                                                s/ David P. Parker
                                                Case Manager